IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

SABRINA HANNING,

    Plaintiff,

v.                             Civil Action No. 5:03CV257
                                           (STAMP)

WHEELING ISLAND GAMING, INC.,

    Defendant.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

I. Procedural History

On November 25, 2003, the plaintiff, Sabrina Hanning, filed a complaint in this Court alleging that the defendant, Wheeling Island Gaming, Inc. ("Wheeling Island"),[1] subjected her to sexual harassment, a hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e-2(a)(1) and 2000e-3(a), and the West Virginia Human Rights Act, W. Va. Code § 5-11-1 to -21. On July 13, 2005, Wheeling Island filed a motion for summary judgment, to which the plaintiff responded and Wheeling Island replied. This motion is now fully briefed and ripe for review. After reviewing the parties' memoranda and the applicable law, this Court finds that Wheeling Island's motion for summary judgment should be granted.

---

[1] Delaware North Corporation was initially named as a defendant in this case, but was dismissed without prejudice by an order dated December 15, 2004.

## II. Facts

Wheeling Island Gaming, Inc. operates a casino, hotel, and entertainment establishment in Wheeling, West Virginia. The plaintiff was employed at this establishment during two separate periods of time: (1) from June 2000 until July 3, 2002, when she was terminated; and (2) from February 24, 2003 until April 2003, when she resigned. The plaintiff was a bus server for one of the restaurants in the facility during both of these periods.

In October 2001, Darrel Wayerski ("Wayerski") became the Food and Beverage Director for Wheeling Island. The plaintiff claims that at some point after her return from maternity leave in April 2002, Wayerski began to express inappropriate interest in her and to make propositions. The plaintiff claims that although she repeatedly rejected him, Wayerski continued to proposition her. The plaintiff claims that she reported his actions to her supervisor, Barona Aswad, the Assistant Manager of the Food and Beverage Department, in June 2002, but that Wheeling Island took no action.

On June 14, 2002, Wayerski came to work intoxicated and initiated a confrontation with another employee, Trimenda Miklas. The plaintiff was not present at the time of this altercation. As a result of his conduct, Wayerski was terminated on June 28, 2002.

The plaintiff had three documented incidents of behavioral problems, which are recorded as a "Record of Employee Counseling."

Two were on June 28, 2001 and July 3, 2002 for unprofessional conduct and one was on June 27, 2002 for missing three days of work around that time period. The Record of Employee Counseling dated July 3, 2002, terminated the plaintiff for disciplinary reasons. She filed a grievance with the union and, as the result of an Agreement and Release between the union and the plaintiff, returned to her job on February 17, 2003.

On December 9, 2002, the plaintiff filed a grievance with the Equal Employment Opportunity Commission ("EEOC") based upon the alleged sexual harassment by Wayerski. The EEOC dismissed her complaint on June 30, 2003 for lack of evidence of violation of the statutes.

On March 25, 2003, the plaintiff and a co-worker, Cathy McMillan ("McMillan"), engaged in a verbal altercation in front of guests. After this altercation, the plaintiff failed to attend work for two days. The Human Resource Director, Jane Libby ("Libby"), reprimanded both the plaintiff and McMillan for their behavior. Further, Libby told the plaintiff that she would suffer a loss of her seniority unless she could produce a doctor's excuse for her absences. During this counseling session, the plaintiff resigned due to her anger regarding the sanction of losing her seniority.

III.  Applicable Law

Under Federal Rule of Civil Procedure 56(c), summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  The party seeking summary judgment bears the initial burden of showing the absence of any genuine issues of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  "The burden then shifts to the nonmoving party to come forward with facts sufficient to create a triable issue of fact." Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991), cert. denied, 502 U.S. 1095 (1992)(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986)).  However, as the United States Supreme Court noted in Anderson, "Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial."  Id. at 256.  "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial -- whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party."  Id. at 250; see also Charbonnages de France v.

Smith, 597 F.2d 406, 414 (4th Cir. 1979)(Summary judgment "should be granted only in those cases where it is perfectly clear that no issue of fact is involved and inquiry into the facts is not desirable to clarify the application of the law." (citing Stevens v. Howard D. Johnson Co., 181 F.2d 390, 394 (4th Cir. 1950))).

In Celotex, the Court stated that "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322. Summary judgment is not appropriate until after the non-moving party has had sufficient opportunity for discovery. See Oksanen v. Page Mem'l Hosp., 912 F.2d 73, 78 (4th Cir. 1990), cert. denied, 502 U.S. 1074 (1992). In reviewing the supported underlying facts, all inferences must be viewed in the light most favorable to the party opposing the motion. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## IV. Discussion

Wheeling Island argues that this case should be summarily dismissed because: (1) the plaintiff cannot establish a prima facie case of hostile work environment or quid pro quo sexual harassment; and (2) the plaintiff cannot establish a prima facie case of retaliation. In response, the plaintiff contends that there are

genuine issues of material fact with respect to the existence of a sexually abusive and hostile work environment.[2] Specifically, the plaintiff argues that genuine issues of material fact exist as to whether the harassment was so severe or pervasive to create a hostile work environment and as to whether the harassment can be imputed to Wheeling Island. The plaintiff also argues that her retaliation claim must survive. She concedes that the Agreement and Release she signed precludes her claim of retaliation with respect to her first termination. However, she argues that there are genuine issues of material fact regarding whether her second departure was voluntary or was a constructive discharge.

1. Hostile Work Environment

In order to establish a prima facie hostile work environment claim, a plaintiff must show: "(1) the subject conduct was unwelcome; (2) it was based on the sex of the plaintiff; (3) it was sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) it was imputable on some factual basis to the employer." Spicer v. Virginia, 66 F.3d 705, 710 (4th Cir. 1995)(citing Harris v. Forklift Sys., Inc., 510 U.S. 17, 20 (1993)). The plaintiff must demonstrate that the workplace "was both subjectively and

---

[2] At the pretrial conference, plaintiff's counsel indicated that the plaintiff is now abandoning her quid pro quo sexual harassment claim.

objectively hostile." Gunten v. Maryland, 243 F.3d 858, 870 (4th Cir. 2001).

In determining whether conduct is sufficiently pervasive to permit a reasonable jury to find a hostile work environment, a court must consider: (1) its frequency; (2) its severity; (3) whether it is physically threatening or humiliating, or instead constitutes mere offensive utterances; (4) whether it unreasonably interferes with the plaintiff's work performance; and (5) whether it resulted in psychological harm. Harris, 510 U.S. at 21 (1993); Connor, 227 F.3d at 193.

"Employers are not automatically liable for acts of harassment levied by supervisors against subordinates. Rather, there must be some basis in law for imputing the acts of the supervisor to the employer." Spriggs v. Diamond Auto Glass, 242 F.3d 179, 186 (4th Cir. 2001)(citations omitted). Employer liability is generally established in one of three ways: (1) by proving that the acts were committed by a person of high rank in the company who may be considered the organization's "proxy;" (2) by proving that the plaintiff suffered a "tangible employment action;" and (3) by proving that the plaintiff suffered an actionable hostile work environment at the hands of her immediate supervisor. Faragher v. City of Boca Raton, 524 U.S. 775, 789, 807 (1998); Burlington Indus. v. Ellerth, 524 U.S. 742, 765 (1998).

The Supreme Court of the United States has held that a tangible employment action occurs when "a significant change in employment status" is created, "such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits." Ellerth, 524 U.S. at 761.

In Johnson v. West, 218 F.3d 725 (7th Cir. 2000), the Seventh Circuit held:

> Vicarious liability automatically applies when the harassing supervisor is either (1) "indisputably within that class of an employer organization's officials who may be treated as the organization's proxy," Faragher, 524 U.S. at 789, or (2) "when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." Id. at 808. Absent either of these situations, however, an employer may avoid vicarious liability by showing "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." Ellerth, 524 U.S. at 765.

Id. at 730. Further, the Supreme Court noted in Ellerth that "[n]o affirmative defense is available . . . when the supervisor's harassment culminates in a tangible employment action, such as discharge, demotion, or undesirable reassignment." 524 U.S. at 765.

This Court finds the plaintiff cannot meet the four prong test set out in Spicer v. Virginia, 66 F.3d 705, 710 (4th Cir. 1995). Specifically, the plaintiff failed to meet the third and fourth

prongs of the test.  To prove the third element, Ms. Hanning must demonstrate that the work environment was "so polluted with sexual harassment that it altered the terms and conditions of her employment." Anderson v. G.D.C., Inc., 281 F.3d 452, 458-9 (4th Cir. 2002).  This Court finds that the circumstances related by Ms. Hanning in this case, even if true, and even viewed in their totality, do not amount to a hostile work environment.

Ms. Hanning began her social relationship with Mr. Wayerski around April 2002.  Hanning Dep. at 14.  Several co-workers from Wheeling Island would get together after work to socialize.  The plaintiff and Mr. Wayerski were part of this group and spent time together at several locations, including the Tropicana, the Legion of Guardsmen, and Mr. Wayerski's apartment.  Approximately a month after the plaintiff, Ms. Hanning, began her social relationship with Mr. Wayerski, she alleges that the harassment began.

According to Ms. Hanning, there are numerous incidents of harassment, but there is no indication as to how many incidents of harassment actually occurred at work versus during social outings. The plaintiff, Ms. Hanning alleges that the numerous incidents of harassment were pervasive enough to satisfy the third prong of the Spicer, 66 F.3d at 710, test.  The plaintiff asserts that the propositions began in April 2002.  However, she failed to report any of these incidents until June 20, 2002, when she "made the

comment to Barona."[3]  The plaintiff asserts that the sexual harassment was pervasive, but did not complain about the incidents until over a month after she began her social relationship with Mr. Wayerski.  These facts, accepted in a light most favorable to the plaintiff, do not rise to the level of a hostile work environment.  Mr. Wayerski's alleged comments were not sufficiently severe or pervasive to be actionable.

To prove the fourth prong, plaintiff must prove that some basis exists for imputing liability to the employer.  An employer is strictly liable when a supervisor sexually harasses an employee and then takes a tangible employment action against the employee.  Faragher v. City of Boca Raton, 524 U.S. 775, 808 (1998).  The tangible employment action can be discharge, demotion, or undesirable reassignment.  Id.  The plaintiff asserts that a tangible employment action was taken by Wheeling Island when it terminated her on July 3, 2002.  After two weeks of terminating Ms. Hanning, Wheeling Island reinstated her with two weeks of back pay due to a mistake regarding disciplinary procedures.

According to Wheeling Island's policy, an employee can be terminated after their third warning in a twelve-month period for absenteeism or for various employee misconduct, including lack of

---

[3] On June 20, 2002, Ms. Hanning reported the alleged sexual harassment to Ms. Barona Aswad, the Assistant Manager of the Food and Beverage Department.  Mr. Wayerski was terminated eight days after Ms. Hanning reported her complaint, albeit for other disciplinary reasons.

professionalism.[4] Wheeling Island Racetrack and Gaming Center, New Hire Handout, 17 (2004). Ms. Hanning had three documented Records of Employee Counseling. The first record was dated June 28, 2001 for unprofessional conduct, the second was dated on June 27, 2002 for missing three days of work, and the third was dated July 3, 2002[5] for unprofessional conduct. Ms. Hanning's third warning on July 3, 2005 was just a little over twelve months prior to the first warning on June 28, 2001. Wheeling Island determined that it should not have counted it as her third warning and reemployed Ms. Hanning with back pay. There is no supporting evidence that Ms. Hanning was terminated based upon her sexual harassment complaint. Wheeling Island did not make a tangible employment action when it terminated Ms. Hanning for unrelated disciplinary reasons.

On the other hand, when the harassment does not result in a tangible employment action, the employer may raise an affirmative defense that comprises two elements: (1) the employer exercised reasonable care to prevent the supervisor's harassing conduct, and (2) the employee unreasonably failed to take advantage of the

---

[4] The handbook also states that the employee is involved in an employment-at-will situation and can be terminated "at any time, with or without cause, as long as there is no violation of applicable federal or state law." Wheeling Island Racetrack and Gaming Center, New Hire Handout, 8 (2004). Ms. Hanning acknowledged that she received the handout on September 12, 2000.

[5] The record of employee counseling that was written on July 3, 2002 reported two separate incidents of unprofessional conduct, one occurring on July 2 and the other one occurring on July 3.

preventive opportunities provided by the employer.  Id. at 807.
The first part of the test is met that Wheeling Island exercised reasonable care to prevent Mr. Wayerski's harassing behavior because there was an anti-harassment policy and complaint procedure implemented and Wheeling Island terminated Mr. Wayerski's employment eight days after plaintiff reported the alleged sexual harassment.[6]  The second part of the test is met because Ms. Hanning failed to use the complaint procedure until after a month or more of harassment by Mr. Wayerski.  Faragher, 524 U.S. at 807-8 (holding that the employer's burden under the second element of the defense will normally be satisfied if the employee fails to use the complaint procedure provided by the employer).

Approximately eight days after Ms. Hanning complained, Mr. Wayerksi resigned from his employment.  This further provides evidence that Wheeling Island took effective remedial action after learning of Mr. Wayerski's conduct and no further sexual harassment occurred.  See Spicer v. Virginia Dep't of Corrections, 66 F.3d 705, 710-712 (4th Cir. 1995)(holding that an employer was not liable for sexual harassment because it took remedial action that resulted in the cessation of the offensive conduct).  Thus, for the above stated reasons, the plaintiff fails to meet the third and

---

[6] Specifically, Mr. Wayerski was permitted to resign from employment rather than be terminated.  Doc. No. 30 at 4, FN 1.

fourth prongs to establish a prima facia hostile work environment claim.

2. Retaliation

In order to establish a prima facie case of retaliation, Ms. Hanning must prove: (1) that she engaged in protected activity; (2) that she suffered an adverse employment action; and (3) that there was a causal link between the protected activity and the adverse employment action. Laughlin v. Metro. Washington Airports, 149 F.3d 253, 258 (4th Cir. 1998).

> Protected activities fall into two distinct categories: participation or opposition. See 42 U.S.C. § 2000e-3(a) (West 1994). An employer may not retaliate against an employee for participating in an ongoing investigation or proceeding under Title VII, nor may the employer take adverse employment action against an employee for opposing discriminatory practices in the workplace.

Id. at 259. "To qualify as opposition activity an employee need not engage in the formal process of adjudicating a discrimination claim. Opposition activity encompasses utilizing informal grievance procedures as well as staging informal protests and voicing one's opinions in order to bring attention to an employer's discriminatory activities." Id.

"Adverse employment actions include any retaliatory act or harassment if that act or harassment results in an adverse effect on the terms, conditions, or benefits of employment." Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 188 (4th Cir. 2004).

13

In order to prove constructive discharge, a plaintiff must demonstrate that "the employer knowingly permitted conditions of discrimination in employment so intolerable that a reasonable person subject to them would resign." Campbell v. Florida Steel Corp., 919 S.W.2d 26, 34 (Tenn. Ct. App. 1996). Further, the Campbell court noted that "in the context of a hostile work environment claim, that standard requires a plaintiff claiming constructive discharge to demonstrate that the harassment is so severe or pervasive that work conditions were intolerable . . . ." Id.

The elements of retaliation under the West Virginia Human Rights Act are substantially similar to the elements of retaliation under Title VII. A plaintiff must demonstrate: (1) that she engaged in protected activity; (2) that her employer was aware of the protected activities; (3) that she was subsequently discharged; and, absent other evidence tending to establish a retaliatory motivation, (4) that her discharge followed her protected activities within such period of time that the court can infer retaliatory motivation. Frank's Shoe Store v. West Virginia Human Rights Comm'n, 179 W. Va. 53, 61 (1986).

The plaintiff claims that she was terminated in retaliation on July 3, 2002, and then when she was rehired she was constructively discharged by the actions of fellow employees and supervisors. This Court disagrees with the plaintiff's argument regarding her

14

termination on July 3, 2002.  Plaintiff was terminated because she had three written complaints against her.[7]  Wheeling Island determined that there was a mistake in counting the June 28, 2001 incident because it was over a year old.  Thus, Wheeling Island reinstated Ms. Hanning with back pay.  The three incidents of behavioral problems are documented.  Ms. Hanning has not provided any evidence that she was terminated for any other reason than her absenteeism and unprofessional conduct.

Further, there is no evidence of constructive discharge after Ms. Hanning began work again on February 17, 2003.  To prove constructive discharge, the conditions of discrimination in employment must be so intolerable that a reasonable person subjected to them would resign.  Campbell, 919 S.W.2d at 34.  The plaintiff asserts that she was constructively discharged by the intolerable conditions at work. Specifically, the plaintiff claims that her co-workers were unfriendly to her and would keep her from getting customers.  Plaintiff's claims that she was constantly bothered by other employees because she was reinstated with her seniority does not rise to the level of constructive discharge. See Carter v. Ball, 33 F.3d 450, 459 (4th Cir. 1994)(holding that "dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions are not

---

[7] Record of Employee Counseling dated June 28, 2001, June 27, 2002 and July 3, 2002.

15

so intolerable as to compel a reasonable person to resign"). Further, the employees who were allegedly criticizing the plaintiff regarding her seniority were not supervisors. The employer did not engage in deliberate actions to force the plaintiff to quit her job. The actions the plaintiff complains about are regarding her problems with employees with less seniority, and who were supposedly jealous that the plaintiff retained her seniority.

After Hanning was reinstated to her job, there were several behavioral incidents, including altercations with other co-workers and calling off work on three different occasions.[8] On July 3, 2002, Jane Libby, the Human Resource Director, met with Hanning to discuss the latest problem of unprofessional conduct. Ms. Libby told the plaintiff that she would suffer a loss of her seniority unless she could produce a doctor's excuse for her absences. During this meeting, the plaintiff resigned due to her anger regarding the sanction of possibly losing her seniority. Ms. Hanning's altercations were not so severe that it created a hostile work environment. Ms. Hanning chose to leave her employment out of frustration and anger at being reprimanded. Wheeling Island did not create an employment condition that was so intolerable as to compel a reasonable person to resign. Ms. Hanning did not prove

---

[8] In Hanning's deposition she stated that there was an incident with Kathy McMillan. Hanning Depo. at 77-8. The Human Resource Director, Jane Libby, reprimanded both the plaintiff and Ms. McMillan for their behavior.

that the employer deliberately forced her to quit or that her working conditions were intolerable. Therefore, Ms. Hanning was not constructively discharged in retaliation.

## V. Conclusion

Because the defendant has set forth sufficient evidence to demonstrate to this Court that there is an absence of a genuine issue of material fact with respect to each of the plaintiff's claims, the defendant's motion for summary judgment is hereby GRANTED pursuant to Rule 56(e). This action is DISMISSED and STRICKEN from the docket of this Court.

IT IS SO ORDERED.

The Clerk is DIRECTED to transmit a copy of this memorandum opinion and order to counsel of record herein. Pursuant to Federal Rule of Civil Procedure 58, the Clerk is DIRECTED to enter judgment on this matter.

DATED: October 26, 2005

/s/ Frederick P. Stamp, Jr.
FREDERICK P. STAMP, JR.
UNITED STATES DISTRICT JUDGE